**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WILLIAMS-SONOMA, INC.,** | |
| **Plaintiff,** | Case No.: 1:24-cv-06597 |
| **v.** | |
| **CARROT CART, INC., d/b/a DUPE.COM,** | **COMPLAINT** |
| **Defendant.** | **JURY TRIAL DEMANDED** |

Plaintiff Williams-Sonoma, Inc. ("WSI" or "Plaintiff"), by and through its undersigned counsel, complains of Defendant Carrot Cart, Inc. d/b/a Dupe.com ("Dupe.com" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1.      Plaintiff WSI is one of the world's leading, design-led multi-channel home retailers. Its portfolio includes some of the country's most trusted brands, including West Elm® ("West Elm"), Pottery Barn® ("Pottery Barn"), Pottery Barn Kids®, and Williams Sonoma®, among others (collectively, the "WSI Brands").

2.      Unlike many other places where customers can buy furniture, WSI designs and develops the majority of WSI Brands' furniture products in-house, and it does not license its designs or sell its proprietary products through other retailers or third-party online marketplaces. WSI spends a significant amount of time, effort, and money on its in-house designs. Indeed, WSI's multi-phrase in-house product design and development process for a single piece of furniture customarily takes a year from concept to market.

3.      WSI's success is not merely based on the aesthetic appeal of its products. WSI works with select vendors, who are chosen not only for their manufacturing capabilities but also

for their corporate responsibility and certain sustainability standards, to manufacture products to WSI's specifications including using high quality, sustainable materials, and ethical manufacturing processes. As a result of these efforts, WSI is proud to be the only exclusive home-furnishings retailer ranked among Barron's 100 Most Sustainable U.S. Companies (for seven years in a row). WSI also is one of only nine furniture retailers (out of 127 retailers considered) recognized last year as a "Sustainable Furnishings Council Wood Furniture Top Scorer" for its usage of FSC® certified wood. Earlier this month, WSI was recognized as a top retailer on TIME Magazine's 2024 list of America's Best Mid-Sized Companies. WSI is proud to be a leader in the industry with a values-based culture and commitment to achieving its sustainability goals.

4.      Furthermore, when a customer considers buying a piece of furniture from Pottery Barn or West Elm for their home, they are offered more than just a thoughtfully designed and crafted product. WSI – unlike online-only retailers – also operates a fleet of over 500 brick-and-mortar stores nationwide, which allow consumers to make purchases with confidence, if they would like to see WSI's products in-person or ask one of WSI's dedicated store associates a question. WSI also offers free in-home design services, white-glove delivery services, and on-demand customer service professionals available worldwide (in the U.S., between the hours of 6:00am-7:00pm Pacific, seven days a week), as well as the opportunity for its customers to participate in its The Key Rewards cross-brand loyalty and credit card program. In short, purchasing a product from a WSI Brand involves more than just ordering something that looks good online.

5.      Defendant Dupe.com operates a website and browser extension that purport to allow online shoppers to use a "reverse image"-type search function to find duplicate or "dupe" replacement consumer goods for lower prices. Obviously, shoppers can and should freely compare

prices and choose among competing products, including lawful "look-for-less" products, when deciding how to spend their money.  There is a problem, however, with *how* Dupe.com markets and operates its search tool – namely, by "duping" its own customers, falsely disparaging WSI and its brands, products, and business practices, and infringing WSI's intellectual property along the way – all to the detriment of unsuspecting consumers and in violation of federal and state law, as described below.

6.      When Dupe.com launched in March 2024, it embarked on a marketing campaign that was designed to go "super viral,"[1] not because of the qualities of its platform, but rather by falsely manufacturing outrage.[2]  In a series of advertisements posted on Instagram and TikTok, Dupe.com's Co-Founder and CEO Bobby Ghoshal claimed that he "fell for a furniture price scam," so he "built [Dupe.com] to fight back."[3]  According to Defendant, the alleged "price scam" that had purportedly taken in their founder was that furniture retailers were "all selling the *same stuff* at *different prices*."[4]  Its search tool, Defendant claimed, allowed shoppers to reclaim the "upper hand"[5] against such unethical, price gouging retailers by uncovering the "same exact" products available on other websites.[6]

7.      Throughout this campaign, which spans dozens of videos posted on a near-daily basis, Dupe.com has repeatedly targeted WSI and its family of brands.  For example, Dupe.com

---

[1]      https://www.instagram.com/reel/C5bSJ5PrUSl/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (April 6, 2024).
[2]      "How Dupe.com Became the Internet's Favorite Shopping Hack," Assembly (June 24, 2024), https://www.linkedin.com/pulse/how-dupecom-became-internets-favorite-shopping-hack-meetassembly-8sgkc/ ("In every piece of content, @dupedupedupe creates a villain that the audience rallies against.").
[3]      *See, e.g.,*  https://www.instagram.com/reel/C43bUd_gDa2/?hl=en  (March  23,  2024); https://www.instagram.com/reel/C5qiSdDrDB4/?igsh=MWVvenE3bDl3NzJkcA== (April 12, 2024) ("I fell for the most obvious furniture price bait and switch, so I decided to build this to fight back").
[4]  https://www.instagram.com/reel/C43bUd_gDa2/?hl=en (March 23, 2024) [caption] (emphasis added).
[5] *Id.*
[6]      https://www.instagram.com/reel/C5YzUq_LoZd/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (April 5, 2024).

has falsely accused West Elm of, *inter alia*: engaging in "a classic furniture price scam"[7] including by selling a chair for over $2,000 while "the same" chair was available for "80-90% percent off" at other sites[8] – but in reality the West Elm chair in question actually costs half that amount and is exclusively manufactured for and sold by WSI. In another ad, Dupe.com accuses furniture companies of "buying their products from the same few factories; they call them different names; they price them differently,"[9] and then singles out Pottery Barn as being "pretty guilty" of doing so "*almost all the time*"[10] – but this statement, too, is false, as described below. Adding insult to injury, Dupe.com makes these and other false and misleading statements while using and displaying WSI's copyrighted images without authorization (as well as engaging in other infringement described herein).

8.      In addition to falsely disparaging WSI, its brands, its products, and its business practices, Dupe.com has also engaged in false advertising designed to deceive consumers regarding its own product offering. For example, while it claims that its search tool returns that are "the same" or very similar to the products that users query, Dupe.com searches routinely return results that are materially different from the original product in appearance, material, size, dimensions, and/or quality. Additionally, Dupe.com frequently presents its advertising posts as though they were organic, user-generated reviews or testimonials, when in reality these are not consumer posts at all, but rather content manufactured by Dupe.com itself for advertising purposes. Mr. Ghoshal himself stars in many Dupe.com ads.

9.      WSI attempted to resolve its serious concerns with Dupe.com's unlawful conduct without litigation. It wrote to Dupe.com first on August 9, 2024, demanding that the misleading

---

[7] https://www.instagram.com/p/C5qiSdDrDB4/ (April 12, 2024).
[8] https://www.instagram.com/reel/C6ZirIOOMXg/?igsh=MWZ4aTJ3czI2Z2Y3ag%3D%3D (April 30, 2024).
[9] https://www.instagram.com/p/C6IAw4ntzdN/ (April 23, 2024)
[10] https://www.instagram.com/p/C84ZuoCuRht/ (July 1, 2024) (emphasis added).

and infringing content be removed.  Defendant, however, did not respond, failing even to acknowledge receipt.  WSI accordingly sent a second letter on August 20, 2024, which was not answered until August 23, when Dupe.com's CEO and cofounder stated that he would "be in touch" after engaging legal counsel.  Dupe.com, however, did not live up to that representation, either, leaving WSI with few options to remedy Dupe.com's harmful and ongoing tortious acts.

10.    Accordingly, WSI now brings this action against Dupe.com for false advertising and unfair competition under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125, *et seq.*; unfair competition under Delaware common law and deceptive trade practices under 6 Del. Code § 2532, *et seq.*; and copyright infringement under 17 U.S.C. § 501.

## THE PARTIES

11.    Plaintiff WSI is a Delaware corporation with a principal place of business located at 3250 Van Ness Avenue, San Francisco, California 94109.  West Elm ("West Elm") is one of several brands owned by WSI and has its own principal place of business at 2 Main Street, Brooklyn, New York, 11201.

12.    Defendant Carrot Cart, Inc. d/b/a Dupe.com is a Delaware corporation with a principal place of business, upon information and belief, located in New York, New York.  Upon information and belief, Dupe.com was co-founded by Bobby Ghoshal, its chief executive officer who resides in Maryland and conducts business in New York, and Ramin Bozorgzadeh, its chief technology officer, who resides and conducts business in New York.

## JURISDICTION AND VENUE

13.    The Court has original subject matter jurisdiction over WSI's Lanham and Copyright Act claims under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

14.    This Court has supplemental jurisdiction over the state-law claims asserted herein

under 28 U.S.C. § 1367(a) because those claims and the federal claims share a common nucleus of fact.

15.    This Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. §§ 301 and 302(a) because, upon information and belief, Defendant: (a) maintains a principal place of business and officer in New York and accordingly is a citizen of the state; (b) transacts business in the State of New York; (c) committed tortious acts within the state; and (d) committed tortious acts without the state causing injury to a person within the state and regularly does or solicits business, engages in a persistent course of conduct, and/or derives substantial revenue from services rendered in the state and/or expects or should reasonably expect its acts to have consequences in the state and derives substantial revenue from interstate commerce.  For example, upon information and belief, Defendant:

A.    Maintains a full-time employee and officer in a principal place of business in New York;

B.    Has conducted marketing efforts, promotional efforts, investment solicitations, and in-person meetings and appearances in New York, relating to the false and misleading conduct and statements alleged herein;

C.    Has systematically directed and/or targeted its business activities at consumers in New York, through, at the very least, holding itself out in public statements as a New York-based company and by maintaining its website and social media accounts, through which consumers in New York can communicate with Defendant and place orders for and purchase goods for delivery in New York, for which Defendant receives commission and other fees, as a means of establishing regular business with New York;

D.    Has developed and maintained within New York an interactive website, Dupe.com, which is accessible in New York; provided links to purchase products, including "Stuff we're loving" and "Clearance picks" pages that are curated by Defendant without user queries; from which Defendant earns substantial revenue associated with product purchases made through clicking weblinks displayed on Dupe.com, including by consumers located in New York; and on which its lists social media contact information, which permits visitors to interact with Defendant via comments and direct messages; and

E.    Is aware of WSI, WSI Brands, and their products, and is aware that its infringing actions, alleged herein, are likely to cause injury to WSI in New York, including specifically its West Elm brand and associated business.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this District, Defendant conducts, transacts, and/or solicits business in this District, and/or Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

### I.    WSI's Business and Reputation for Quality

17.    WSI is one of America's premiere home goods retailers.  WSI owns and operates the WSI Brands, which include some of the country's most widely recognized consumer brands such as Williams Sonoma®, Williams Sonoma Home®, West Elm®, Pottery Barn®, Pottery Barn Kids®, Pottery Barn Teen®, Mark and Graham®, Rejuvenation®, and GreenRow®.

18.    For decades, WSI has offered its customers a selection of exclusive products through dedicated e-commerce websites, catalogs, and a network of over 500 retail locations nationwide.  Through these efforts, WSI has accumulated significant and substantial goodwill in

its WSI Brands and earned a reputation as a leader in the home goods and furnishings space.

19.     WSI is well-known for its high-quality, sustainable furniture products sold through WSI Brands.  Indeed, WSI is the only exclusive home-furnishings retailer ranked among Barron's "100 Most Sustainable Companies" list, an honor it has received since 2018.  It is one of only nine furniture retailers (out of a total of 127 retailers considered) to be recognized as a "Sustainable Furnishings Council Wood Furniture Top Scorer" for its usage of FSC® certified wood.  Recently, WSI was also recognized as a top retailer on TIME Magazine's 2024 list of America's Best Mid-Sized Companies.

20.     In addition to their quality and sustainability, products offered under WSI Brands are also notable for their visual appeal.  Unlike many other retailers who sell furniture online, WSI designs and/or develops the overwhelming majority of its furniture products in-house across its brands.  WSI's in-house designed products are manufactured only for and sold exclusively through WSI Brands.

21.     WSI owns a robust portfolio of intellectual property rights to protect its brands and proprietary designs.  WSI's exclusive intellectual property rights include patented product designs and inventions, copyright-protected works of original expression, and well-established trademark and trade dress rights in its brand names as well as the distinctive features of its products – many of which consumers have come to recognize and associate as exclusively coming from the WSI Brands.  For example, WSI owns hundreds of design patents protecting the ornamental features of many of its proprietary furniture designs.  Further, WSI is the exclusive owner of copyrights in original photographs and other tangible work product created and developed exclusively for use in its brands' catalogs, websites, and other advertising and marketing.  Indeed, WSI owns over 1,000 registrations issued by the U.S. Copyright Office covering its copyrighted works,

specifically including, but not limited to, its original product photography.

## II.    Defendant Attempts to "Dupe" Consumers Into Using Its Search Tool, Which Fails to Identify Duplicates or Lower Prices

22.     This lawsuit arises out of Defendant's operation and promotion of an online search tool, which Defendant falsely claims can help users find duplicate or "dupe" replacement consumer goods for lower prices.  Defendant claims that users only need a picture of the desired product, and its search tool will provide a list of dupes that are the same or substantially similar as the original item.

23.     However, the reality of Defendant's search tool is different.  It often returns results that are markedly dissimilar from the original product in appearance, material, size, quality, and even quantity.

24.     Moreover, Defendant's search tool has misrepresented the true costs of the supposedly discounted dupe products or the original product (or both).

25.     In its efforts to promote its ill-functioning search tool, Defendant has made numerous misleading and outright false statements, both regarding its own business and products and regarding WSI's.

26.     On information and belief, Dupe.com was first launched in 2021.  It was initially conceived as a web-based e-commerce platform and browser extension that allowed customers to save items that they had added to their online shopping carts across various retail websites, so that products they were interested in could be categorized, tracked, and shared.[11]

27.     The platform, however, appears to have languished.  After three years of failing to make its original platform function, by March 2024, Defendant apparently decided to change

---

[11] https://www.linkedin.com/company/dupedotcom/ ("Dupe.com (formerly Carrot)").

course and relaunch as "Dupe.com."[12]

28.     In an overt attempt to go "viral," Dupe.com decided to try to drum up attention to its new offering by depicting its new platform as an answer to alleged furniture "scams."[13]  For example, in an Instagram video posted on April 12, 2024, Mr. Ghoshal introduces his new Dupe.com platform by stating, "I fell for a classic furniture price scam.  It really upset me, and I decided to fight back.  Let me show you what I built."[14]  Likewise, on May 24, 2024, Dupe.com's Instagram page posted a video promoting the search tool, showing a hand holding a piece of paper with the words "I rage-built this after being price gouged online.  You can use it!"[15]  Indeed, the majority of Dupe.com's marketing was devoted not to touting the purported benefits of its software, but rather to manufacturing outrage.[16]

29.     Dupe.com is essentially a reverse image search that purports to allow users to identify duplicates or "dupes" of furniture and other consumer products, either by going to "dupe.com" and pasting the product's URL into the search bar or by uploading a picture of the product into the Dupe.com website or app.  Defendant claims that its search tool allows users to find "the same or very similar items for a fraction of the price."[17]

30.     On information and belief, Dupe.com often does not live up to these representations.  For example, searches on Dupe.com for WSI products often just bring up examples of "fast furniture" products – products made from unvetted factories using less robust

---

[12]https://www.linkedin.com/feed/update/urn:li:activity:7212476834830000128/.
[13]  "How Dupe.com Became the Internet's Favorite Shopping Hack," Assembly (June 24, 2024), https://www.linkedin.com/pulse/how-dupecom-became-internets-favorite-shopping-hack-meetassembly-8sgkc/ ("In every piece of content, @dupedupedupe creates a villain that the audience rallies against.").
[14] https://www.instagram.com/p/C5qiSdDrDB4/ (April 12, 2024).
[15] https://www.instagram.com/p/C7Wm4CWOBiv/ (May 24, 2024).
[16] The marketing scheme appears to have had the desired effect.  Mr. Ghoshal has claimed that, since this pivot of its business model, Dupe.com has "organically grown [its] users from 0 to 2 million in record time." https://www.linkedin.com/feed/update/urn:li:activity:7212476834830000128/.
[17] https://dupe.com/about.

materials like veneer-covered particle board.  Such cheaply-made, mass-produced furniture items are often more susceptible to damage.  Indeed, many are not designed to last for more than a few years.  The result of such "fast furniture" purchases is that consumers reportedly discard them by the tons annually, clogging landfills.[18]

31.    Defendant's marketing is also deceptive in other regards.  For example, despite stating publicly that "the first rule of duping" is "[w]e don't lie about duping,"[19] Defendant's social media frequently does just that – including by presenting its own postings as though they were authentic, organic reviews or testimonials generated by consumers, with statements like "[m]y interior designer just showed me this…umm WTF?!" and "[f]urniture insiders put me on to this price hack…woah!," when in reality these are not user-generated posts at all, but rather content manufactured by Dupe.com itself for advertising purposes, in contravention of regulations governing use of testimonials in ads, such as 16 CFR §§  465.1, 465.2.[20]  Defendant's misleading representations also extend to how its search tool generates revenue.  While claiming on social media posts that the Defendant "do[es]n't make any money if you do this,"[21] in reality, Defendant reportedly receives commissions on every item purchased through its site.[22]

32.    In short, in both its product offering and its marketing, Dupe.com tries to "dupe" unsuspecting consumers.

---

[18] Francesca Perry, "Like fast fashion, 'fast furniture' is a problem for our planet," CNN (Dec. 5, 2022), https://www.cnn.com/style/article/fast-furniture-problem-for-our-planet/index.html.
[19] https://x.com/dupedotcom/status/1773474946317959340 (March 28, 2024).
[20] https://www.instagram.com/p/C6y30GguZaz/ (May 10, 2024); https://www.instagram.com/p/C8enyYIuY-_/ (June 21, 2024); https://www.instagram.com/p/C8zgo0nOHc4/ (June 29, 2024).
[21] https://www.tiktok.com/t/ZTNtkJ6YP/ (July 19, 2024).
[22] https://www.linkedin.com/feed/update/urn:li:activity:7212476834830000128/; https://www.today.com/video/how-dupe-products-help-people-achieve-an-aesthetic-for-less-213876805824. (TODAY Show reporting that "Dupe.com makes a commission for every item purchased through its site").

### III.    Defendant Makes False and Misleading Statements Regarding WSI's Products and Business Practices

33.    In addition to mispresenting the nature of its own product and services, Defendant's advertising has also unlawfully misrepresented WSI's products and business practices.

34.    Defendant's pattern of deceptive conduct is exemplified by its treatment of West Elm's Berra Chair.

35.    WSI's West Elm brand was first launched in 2002, and since has become a market leader in offering modern home furnishings, with a focus on ethically sourced and Fair Trade Certified products.

36.    Over 90 percent of West Elm's products are designed in-house. West Elm devotes tremendous resources to develop proprietary product designs that embody the distinctive West Elm brand. Each season, West Elm offers original products developed by multiple teams of in-house professionals, which include individuals who have graduated from leading design institutions with degrees in industrial design and related specialties. Their multi-phase design process begins by developing concepts, including by traveling the world to identify trends, and then progresses to drafting and refining initial sketches while obtaining input from members of West Elm's merchandising team on key product types and forecasted customer needs. The next phase involves a spec-out process, in which the design team assembles computer-aided design (CAD) files and/or detailed specifications and shares them with WSI's sourcing and merchandising teams to identify appropriate manufacturing partners for costing and sampling product designs. West Elm's sourcing and product development teams then coordinate with selected manufacturing partners to produce samples that are reviewed and refined to meet cost, function, and aesthetic goals. After multiple rounds of samples, and revisions, a final production sample is approved for manufacture. West Elm's design process, in short, involves multiple in-

house teams engaging in a creative and logistical process that typically takes at least a year from concept to market.

37.      West Elm's Berra Chair is one example of a product designed in-house through this process:



38.      On June 9, 2024, Dupe.com's Instagram page posted a video that specifically targeted the Berra Chair (the "Berra Chair Ad").  The Berra Chair Ad begins by depicting a hand holding a neon sticky note in front of a computer screen, which repeats Defendant's familiar "scam" marketing motif described above, reading "I fell for a furniture price scam, so I built this to fight back!"[23]  The hand then removes the note, and the camera zooms in on the West Elm product page for the Berra Chair.  The unseen user adds "dupe.com/" to the beginning of the product page URL from West Elm's website, opening the Dupe.com search result page for this product where an image of the Berra Chair taken from West Elm's website is displayed.  The user

---

[23] https://www.instagram.com/p/C7_3fmQOwAJ/ (June 9, 2024).

then scrolls through a number of purported "dupe" chairs, apparently based on image comparisons to the Berra Chair.



39.    If there was any doubt that Defendant was falsely accusing WSI of "scamming" customers by purportedly obtaining its exclusive Berra Chair from other manufactures and selling it at an inflated price, the caption for the Berra Chair Ad made that false contention explicit, claiming: "A lot of furniture is made in the same few factories and brands sell them for different prices, and we're none the wiser!  Built this helpful tool to help you on your next furniture haul."[24]

40.    Dupe.com goes beyond just offering consumers a tool to find "look-for-less" products – it unnecessarily and unfairly misleads consumers about West Elm's products and business practices.

---

[24] *Id.*  Defendant has made multiple similar social media posts focusing on (and falsely disparaging) WSI's Berra Chair.    *See,    e.g.,*    https://www.instagram.com/p/C7JuxwAuXSB/    (May    19,    2024); https://www.instagram.com/p/C7O3VvOuMoR/ (May 21, 2024); https://www.instagram.com/p/C7Wm4CWOBiv/ (May 24, 2024) (using the Berra Chair to illustrate claims that "I rage-built this after being price gouged online" and "When i found out most furniture online is dropshipped and white labeled, i lost it. Made me build this to fight back.").

41.     Defendant's assertions in the Berra Chair Ad are abjectly false and misleading in several regards.

42.     For example, Dupe.com's representation that WSI's Berra Chair is an example of a "furniture price scam" because "[a] lot of furniture is made in the same few factories," is entirely false, as is the implication that the supposed "dupes" for the Berra Chair are actually the same product sold by different retailers under different brand names for "different prices."

43.     In reality, the Berra Chair is a unique product designed in-house by West Elm, manufactured exclusively for West Elm, and not authorized to be sold by any other retailer.

44.     Defendant has also unlawfully made false statements regarding WSI Brands purportedly engaging in the practice of "white labeling," a term by which Defendant appears to refer to the practice of one company buying a product from a separate manufacturer on a non-exclusive and then rebranding the product as its own.

45.     In a July 1, 2024, Instagram post, a Dupe.com spokesperson claims that "[w]hen it comes to white labeling, Pottery Barn is *pretty guilty almost all the time*"[25] (the "July 1 White Labeling Ad") (emphasis added).

46.     Once again, Defendant's statements are baseless and false. The vast majority of Pottery Barn's products are also developed in-house and produced by manufacturers on an exclusive basis. Pottery Barn (like its sister brand West Elm) invests tremendous resources to develop exclusive, in-house designed products for the Pottery Barn brand.  Pottery Barn also employs skilled designers and merchandising professionals who follow a product development process that takes about a year, from initial concept, through design refinement and multiple rounds of samples, to final product launch.  Accordingly, the July 1 White Labeling Ad

---

[25] https://www.instagram.com/p/C84ZuoCuRht/ (July 1, 2024).

misrepresents and misleads consumers as to Pottery Barn's business practices and unfairly disparages its brand and products.

47.    Additionally, Defendant has unlawfully made inaccurate statements regarding WSI Brands' pricing practices.  For example, in a July 3, 2024 Instagram post, Mr. Ghoshal states, "[y]ou guys know the classic scam, where around big sale events, brands jack up the prices of their products and then 'discount it,' so you feel like you're getting a deal" (the "July 3 Sale Scam Ad"). The July 3 Sale Scam Ad depicts a Pottery Barn dresser as a purported example of this alleged "scam."[26]



48.    Similarly, in a July 4, 2024 Instagram post published the following day, Defendant's social media account posted a second video, using an unauthorized copies of both

---

[26] https://www.instagram.com/p/C8-DYIhuzdD/ (July 3, 2024).

Pottery Barn's and West Elm's websites and photographs, which again implies that WSI Brands have "fake sales"[27] (the "July 4 Sale Scam Ad").

49.    Contrary to Defendant's social media posts, West Elm, Pottery Barn, and all other WSI Brands execute sales in accordance with applicable laws.  Defendant's baseless assertions to the contrary are completely without merit and unlawful.

50.    Furthermore, Defendant also misrepresents the price of WSI Brands' products used in its advertising and on its website.

51.    For example, in an April 30, 2024 post,[28] Dupe.com's Instagram advertisement shows an image of the West Elm Mid-Century Show Wood Chair taken from West Elm's website (the "Mid-Century Show Wood Chair Ad").  In the Mid-Century Show Wood Chair Ad, Dupe.com falsely claims that the West Elm chair pictured costs $2,038, with Mr. Ghoshal stating that the price of the West Elm Mid-Century Show Wood Chair is "two thousand dollars for *this chair*," and that results returned by Defendant's search tool are "80-90% off *the same or similar chairs*."

---

[27] https://www.instagram.com/p/C8__7RNOQaL/ (July 4, 2024).
[28] https://www.instagram.com/p/C6ZirIOOMXg/ (April 30, 2024).



52.     In reality, however, Mr. Ghoshal is quoting West Elm's price for *two chairs*, not one, and also conspicuously omits the fact that even the cost of a single chair varies according to the *finishes* selected by the consumer.  Indeed, the price for the West Elm Mid-Century Show Wood Chair products referenced in the ad varies between $764.15 and $2,098, depending on the fabric choice and wood finish selected by the consumer, and whether the consumer is buying a *single* chair or *set of two* chairs.

53.     The Mid-Century Show Wood Chair is also featured in an April 23, 2024 Instagram ad,[29] which repeats the same claims as the Mid-Century Show Wood Chair Ad and

---

[29] https://www.instagram.com/p/C6IAw4ntzdN/ (April 23, 2024).

further repeats the false accusation of "white labeling" that Defendant previously lobbed at Pottery Barn, stating "[y]our favorite furniture brands, they're all buying their products from the same few factories; they call them different names; they price them differently, and you spend more money than you need." This, too, is an utter falsehood. West Elm's Mid-Century Show Wood Chair is produced on an exclusive basis only for West Elm.

54.     A chart with listing Defendant's false and misleading statements, without limitation, is annexed hereto as **Exhibit 1**, which is incorporated by reference as if fully set forth herein.

55.     On information and belief, Defendant made these and other misleading and false statements knowingly, willfully and/or recklessly.

**IV.     Defendant Infringes WSI's Copyrights**

56.     Defendant's search tool platform and advertising also infringes WSI's registered copyrights.

57.     WSI has registered its proprietary product images with the U.S. Copyright Office and is the owner of all associated copyrights (the "Product Images"), which are valid and subsisting, as detailed in the chart annexed here to as **Exhibit 2**, which is incorporated by reference as if fully set forth herein. Those include Registration Nos.: VAu 1-533-065; VAu 1-533-066; VAu 1-533-067; VAu 1-533-068; VAu 1-553-069; VAu 1-533-070; VAu 1-533-071; and VAu 1-533-333.

58.     WSI expends significant resources in developing and creating its proprietary Product Images. WSI's creative teams make a myriad of decisions including prop selection, lighting, and framing to create distinctive photography to best feature WSI's products. Numerous experts, including professional photographers, location advisors, stylists, and other creative professionals, collectively spent hundreds of hours to create the Product Images referenced above.

WSI is the sole and exclusive owner of all copyrights in those images, all of which have been successfully used in the course of marketing WSI's products for sale. WSI has publicly displayed copies of the copyrighted Product Images above on its websites.

59.    Without authorization, Defendant downloaded, copied, reproduced, reuploaded, displayed, and/or made derivative works using WSI's Product Images in its advertising materials used on various social media platforms, as detailed in Exhibit 2 (the "Advertising Infringements").

60.    Without authorization from WSI, Defendant has displayed, through embedding or otherwise, and/or copied full-sized images of the Product Images, in conducting search inquiries and providing search results returned on its platform Dupe.com, as demonstrated in the videos detailed in Exhibit 2 (the "Platform Infringements").

61.    By means of the Advertising Infringements and the Platform Infringements, Dupe.com infringes, pursuant to 17 U.S.C. § 501(a), WSI's copyrights in the Product Images, which are protected under 17 U.S.C. § 106(1) and (5).

62.    On information and belief, Defendant willfully infringed WSI's copyrights in the Product Images.

## COUNT I
## LANHAM ACT FALSE ADVERTISING (15 U.S.C. § 1125(A)(1)(B))

63.    The allegations set forth in paragraphs 1 through 62 hereof are adopted and incorporated by reference as if fully set forth herein.

64.    Defendant is liable for false advertising, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

65.    Defendant made the above-described false or misleading descriptions or representations of fact in advertising, including in describing its own and WSI's goods and services and in misrepresenting the characteristics of WSI products and the processes through which WSI

develops and sells such products, which are likely to deceive consumers regarding material characteristics of those goods and services.

66.    Defendant's false or misleading statements were made in commercial advertising or promotion disseminated to the public in connection with Defendant's search tool, related services, and products for which Defendant earns commissions and/or other fees.

67.    Defendant's false or misleading statements were made in interstate commerce because such statements were made on social media in connection with the promotion of Defendant's search tool, related services, and products for which Defendant earns commissions and/or other fees.

68.    Defendant's false or misleading statements misrepresented the nature, characteristics, qualities, or geographic origin of its own services or commercial activities, including by falsely referring to the "dupes" presented by Defendant's search tool as being the same or substantially similar to WSI's products.

69.    Defendant's false or misleading statements additionally misrepresented the nature, characteristics, qualities, geographic origin, and other inherent or material qualities and characteristics of its own and WSI's goods and commercial activities.

70.    Defendant's statements were literally false and/or misleading, with the likelihood of causing consumer confusion and deception.

71.    Upon information and belief, Defendant made its false or misleading statements for the purpose of influencing consumers to use its services and/or to purchase products in which Defendant has a financial stake.

72.    Defendant made its false or misleading statements knowingly, deliberately, and willfully, or recklessly.

73.    Defendant made its false or misleading statements with bad faith and with the intent and effect of deceiving, confusing, and/or misleading potential consumers, and thus engaged in egregious conduct.

74.    On information and belief, Defendant profited from its false or misleading statements by driving users to its search tool and gaining revenue from the resulting sale commissions and/or other fees.

75.    WSI has been injured as a result of Defendant's false and misleading statements through both a direct diversion of sales and a lessening of goodwill associated with WSI's brands and products.

76.    Defendant's acts have irreparably damaged WSI and, unless enjoined, will continue to irreparably damage WSI, and WSI has no adequate remedy at law.

77.    Based on Defendant's wrongful actions, WSI is entitled to injunctive relief, as well as monetary damages and other remedies provided by the Lanham Act, including damages that WSI has sustained and will sustain as a result of Defendant's unlawful actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**COUNT II**
**LANHAM ACT UNFAIR COMPETITION (15 U.S.C. § 1125(A)(1)(A))**

78.    The allegations set forth in paragraphs 1 through 77 hereof are adopted and incorporated by reference as if fully set forth herein.

79.    Defendant made false or misleading descriptions or representations of fact in connection with goods and services.

80.    Defendant's false or misleading statements were made in interstate commerce because such statements were made on social media in connection with the promotion of

Defendant's search tool, related services, and products for which Defendant earns a commission or other fees.

81.     Defendant's false or misleading statements misrepresented the source, nature, characteristics, qualities, or geographic origin of WSI's goods/services or commercial activities.

82.     Defendant's false or misleading statements also misrepresented the source, nature, characteristics, qualities, or geographic origin of its own and the "dupe" products presented by Defendant, including by falsely referring to the "dupes" presented by Defendant's search tool as being the same as, or substantially similar to, WSI's products and/or manufactured by the same third-party sources.

83.     Defendant's false or misleading statements misrepresented the affiliation, connection, association, source, origin, sponsorship, or approval of WSI's goods/services and/or commercial activities.

84.     Defendant's false or misleading statements are likely to cause confusion, mistake, or to deceive among consumers.

85.     Defendant made its false or misleading statements with the intent of deceiving potential consumers.

86.     On information and belief, Defendant benefitted from its false or misleading statements by driving users to use its search tool and gaining revenue from the resulting sale commissions and/or other fees.

87.     WSI has been injured as a result of Defendant's false and misleading statements through both a direct diversion of sales and a lessening of goodwill associated with WSI's brands and products.

88.     Defendant's acts have irreparably damaged WSI and, unless enjoined, will continue

to irreparably damage WSI, and WSI has no adequate remedy at law.

89.    Based on Defendant's wrongful actions, WSI is entitled to injunctive relief, as well as monetary damages and other remedies as provided by the Lanham Act, including damages that WSI has sustained and will sustain as a result of Defendant's unlawful actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**COUNT III**
**UNFAIR COMPETITION UNDER DELAWARE COMMON LAW**

90.    The allegations set forth in paragraphs 1 through 89 hereof are adopted and incorporated by reference as if fully set forth herein.

91.    Defendant made false and/or misleading statements regarding the characteristics and origin of WSI's products and did so recklessly and/or in bad faith.

92.    Defendant's false and misleading statements were reasonably calculated to deceive consumers, many of whom are likely former and repeat customers of WSI Brands, as to the origin, characteristics, and quality of WSI goods and services.

93.    WSI had a reasonable expectancy of entering into a valid business relationship with many of Defendant's social media viewers or website users.

94.    Defendant wrongfully interfered with that expectancy, those relationships, and WSI's promotion and conduct of its business by misrepresenting WSI goods, misleading consumers into believing that Defendant's service offers "the same" or "similar" products as WSI brands, and diverting customers from WSI products.

95.    Defendant's actions have confused and deceived consumers, and led them to believe Defendant's false representations, described above, including that third party retailers (from which Defendant earns commissions) were selling the exact same products as WSI offers.

96.    Defendant's unfair actions have prevented WSI from legitimately earning revenue.

97.    Defendant's actions resulted in harm to WSI, including by a loss of goodwill associated with its brands and diverted sales by a loss of potential business relationships.

**COUNT IV**
**DECEPTIVE TRADE PRACTICES (6 DEL. CODE § 2532)**

98.    The allegations set forth in paragraphs 1 through 97 hereof are adopted and incorporated by reference as if fully set forth herein.

99.    Defendant engages in a course of business through its platform, gaining revenue based on commissions for products purchased through use of the search tool and/or other fees.

100.    Defendant made false and/or misleading statements regarding the source of WSI and others' goods, and did so willfully, recklessly, and/or in bad faith.

101.    Defendant misrepresented the characteristics, uses, benefits, quantities, sponsorship, approval, status, affiliation, and connection of WSI and others' goods.

102.    Defendant falsely represented that goods were of a particular standard, quality, or grade, and that goods are of a particular style or model, when they were of another.

103.    Defendant disparaged WSI's goods and services by false or misleading representations of fact.

104.    Defendant made false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions.

105.    WSI has been harmed in its commercial interests as a result of Defendant's conduct described herein, including by diverting sales and harming its goodwill.

106.    Based on Defendant's wrongful actions, WSI is entitled to injunctive relief, as well as other remedies as provided by the Delaware Deceptive Trade Practices Act, including treble damages and its reasonable attorneys' fees and costs.

## COUNT V
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) (ADVERTISING INFRINGEMENTS)

107.    The allegations set forth in paragraphs 1 through 106 hereof are adopted and incorporated by reference as if fully set forth herein.

108.    Without authorization, Defendant downloaded, copied, reuploaded, displayed, and created derivative works using WSI's Product Images on its social media platforms, as detailed in Exhibit 2.

109.    By downloading, copying, reuploading, and displaying WSI's Product Images on its social media platforms without authorization, Defendant has infringed WSI's registered copyrights.

110.    Defendant have willfully infringed WSI's rights in and to its copyrights to the Product Images.

111.    On information and belief, Defendant profited from its infringing acts.

112.    Defendant's acts have irreparably damaged and, unless enjoined, will continue to irreparably damage WSI, and WSI has no adequate remedy at law.

113.    Based on Defendant's wrongful actions, WSI is entitled to injunctive relief, as well as monetary damages and other remedies as provided by the Copyright Act, including damages that WSI has sustained and will sustain as a result of Defendant's unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, statutory damages, enhanced exemplary damages, and reasonable attorneys' fees and costs.

## COUNT VI
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) (PLATFORM INFRINGEMENTS)

114.    The allegations set forth in paragraphs 1 through 113 hereof are adopted and incorporated by reference as if fully set forth herein.

115.    Without authorization, Defendant has displayed, through embedding or otherwise,

and/or copied, images of the Product Images in conducting search inquiries and providing search results returned on its platform Dupe.com, as demonstrated in the videos detailed in Exhibit 2 and which is ongoing.

116.    Defendant has willfully infringed WSI's rights in and to its copyrights to the Product Images.

117.    On information and belief, Defendant profited from its infringing acts.

118.    Defendant's acts have irreparably damaged and, unless enjoined, will continue to irreparably damage WSI, and WSI has no adequate remedy at law.

119.    Based on Defendant's wrongful actions, WSI is entitled to injunctive relief, as well as monetary damages and other remedies as provided by the Copyright Act, including damages that WSI has sustained and will sustain as a result of Defendant's unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, statutory damages (if elected), enhanced exemplary damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, WSI respectfully prays for judgment against Defendant as follows:

A.    Finding that, (i) as to Count I and Count II, Defendant engaged in false advertising and unfair competition in violation of 15 U.S.C. § 1125 and that its activities were willful and/or constitute an exceptional case under 15 U.S.C. § 1117; (ii) as to Count III, Defendant engaged in unfair competition in violation of Delaware common law and that its actions were willful and/or in bad faith; (iii) as to Count IV, Defendant engaged in deceptive trade practices in violation of 6

Del. Code § 2532, *et seq*.; and (iv) as to Count V and Count VI, Defendant infringed WSI's copyrights and that said infringement was willful.

      B.     That Defendant and all of those acting in concert with it, including its agents and servants, and all those on notice of this suit, be preliminarily and permanently enjoined from using WSI-owned images in any publications and from engaging in any acts and practices that deceive the public and/or the trade with regard to WSI Brands, their products, and WSI business activities;

      C.     That this Court require an accounting of profits by Defendant;

      D.     That the Court award WSI monetary damages in the form of Defendant's profits, WSI's actual damages, statutory damages (if so elected by WSI), enhanced damages, exemplary damages, treble damages, corrective advertising damages, costs, expenses, and prejudgment and post-judgment interest;

      E.     That the Court award WSI its reasonable attorneys' fees to the full extent provided for under the law; and

      F.     That WSI be awarded all further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

     WSI respectfully demands a trial by jury on all claims.

Dated: New York, New York          ARNOLD & PORTER KAYE SCHOLER LLP
       August 30, 2024

                            /s/ Dori Ann Hanswirth
                            Dori Ann Hanswirth
                            Theresa M. House
                            250 West 55th Street
                            New York, NY 10019-9710
                            Tel.: (212) 836-8000
                            Dori.Hanswirth@arnoldporter.com
                            Theresa.House@arnoldporter.com

                            *Attorneys for Plaintiff Williams-Sonoma, Inc.*