**UNITES STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WILLIAMS-SONOMA, INC.,

                              Plaintiff,

        v.                                                          Case No. 1:24-cv-06597 (VSB)

CARROT CART, INC., d/b/a DUPE.COM

                              Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS THE COMPLAINT

Justin M. Sher
Amanda Greenfield
Courtney A. Gans
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, NY 10004
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
E-mail: JSher@shertremonte.com

*Attorneys for Carrot Cart, Inc. (d/b/a Dupe.com)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

I.      Legal Standard Under Rule 12(b)(6) .......................................................................... 5

II.    WSI Fails to State a Claim for Copyright Infringement ....................................... 5

      A.     The Complaint Does Not Allege an Infringing "Display" Because the Dupe.com Platform Displays Only an Embedded Link................................. 5

      B.     Regardless, Dupe.com's Use of the Product Images on Its Platform is a Fair Use ......................................................................................... 6

      C.     Similarly, Dupe.com's Use of the Product Images in its Social Media Posts is a Fair Use ................................................................................. 12

III.   The Complaint Fails to State a Claim under the Lanham Act ......................... 12

      A.     The Complaint Fails to State a Claim for False Advertising .............................. 12

      B.     Plaintiff's Unfair Competition Claim Is Duplicative of its False Advertising Claim ........................................................................................ 19

IV.   Plaintiff's Delaware Claims Also Fail .......................................................................... 20

      A.     Plaintiff Fails to State a Common Law Unfair Competition Claim..................... 20

      B.     WSI Fails to Allege a Claim under the Delaware Deceptive Trade Practices Act ("DTPA")................................................................................ 23

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*FMC Corp. v. Summit Agro USA, LLC,*
    No. CV 14-51-LPS, 2014 WL 6627727 (D. Del. Nov. 14, 2014) ........................................... 22

*Arrow Prods., LTD. v. Weinstein Co.,*
    729 F. App'x 131 (2d Cir. 2018) ............................................................................................ 7

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,*
    756 F.3d 73 (2d Cir. 2014) ................................................................................................... 11

*Accenture Global Servs. GmbH v. Guidewire Software Inc.,*
    581 F. Supp. 2d 654 (D. Del. 2008) ..................................................................................... 23

*Alcon Vision, LLC v. Lens.com, Inc.,*
    No. 1:18-CV-00407 (NG)(RLM), 2022 WL 1665453 (E.D.N.Y. May 25, 2022) ................. 15

*Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi,*
    232 F. Supp. 3d 613 (D. Del. 2017) ..................................................................................... 24

*Arica Inst., Inc. v. Palmer,*
    970 F.2d 1067 (2d Cir. 1992) ................................................................................................. 9

*Arrow Prods., LTD. v. Weinstein Co.,*
    44 F. Supp. 3d 359 (S.D.N.Y. 2014) ...................................................................................... 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................... 5

*Authors Guild v. Google Inc.,*
    804 F.3d 202 (2d Cir. 2015) ..................................................................................... 6, 8, 10, 11

*Authors Guild, Inc. v. HathiTrust,*
    755 F.3d 87 (2d Cir. 2014) ..................................................................................................... 9

*Barcroft Media, Ltd. v. Coed Media Grp., LLC,*
    297 F. Supp. 3d 339 (S.D.N.Y. 2017) ..................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................... 5

*Bellin v. Zucker,*
    6 F.4th 463 (2d Cir. 2021) ...................................................................................................... 1

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006) ................................................................................ 7

*Bubble Genius LLC v. Smith*,
  239 F. Supp. 3d 586 (E.D.N.Y. 2017) ................................................................ 21

*Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*,
  632 F. Supp. 3d 471 (S.D.N.Y. 2022) ................................................................. 19

*Capitol Recs., LLC v. ReDigi Inc.*,
  910 F.3d 649 (2d Cir. 2018) .......................................................................... 8, 10

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) ............................................................................ 8, 9

*Casper Sleep, Inc. v. Nectar Brand LLC*,
  No. 18-cv-4459 (PGG), 2020 WL 5659581 (S.D.N.Y. Sept. 23, 2020) ................ 19

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*,
  843 F.3d 48 (2d Cir. 2016) ................................................................................ 13

*Curley v. AMR Corp.*,
  153 F.3d 5 (2d Cir. 1998) .................................................................................. 20

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018) ........................................................... 15, 19

*Erchonia Corp. v. Bissoon*,
  410 F. App'x 416 (2d Cir. 2011) ....................................................................... 13

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ........................................................................................... 7

*Fitzgerald v. CBS Broad., Inc.*,
  491 F. Supp. 2d 177 (D. Mass. 2007) ................................................................ 10

*Giunta v. Dingman*,
  893 F.3d 73 (2d Cir. 2018) .................................................................................. 5

*Goldman v. Breitbart News Network, LLC*,
  302 F. Supp. 3d 585 (S.D.N.Y. 2018) .................................................................. 6

*Goodman v. Bouzy*, No. 21-CV-10878 (AT),
  (JLC), 2023 WL 3296203 (S.D.N.Y. May 8, 2023) ............................................... 3

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) ............................................................................................... 6

*Guidance Endodontics, LLC v. Dentsply, Int'l, Inc.*,
  663 F. Supp. 2d 1138 (D.N.M. 2009) ........................................................................... 23

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) ........................................................................................................ 11

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
  304 F. Supp. 3d 392 (S.D.N.Y. 2018) .................................................................... 20, 21

*Hunley v. Instagram, LLC*,
  73 F.4th 1060 (9th Cir. 2023) ........................................................................................ 5

*Int'l Code Council, Inc. v. UpCodes Inc.*,
  43 F.4th 46 (2d Cir. 2022) ............................................................................................ 12

*Kelly-Brown v. Winfrey*,
  717 F.3d 295 (2d Cir. 2013) ............................................................................................ 7

*Kulick v. Gamma Real Est. LLC*,
  No. 1:20-CV-03582-MKV, 2022 WL 4467341 (S.D.N.Y. Sept. 23, 2022) ................... 22

*Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*,
  245 F. Supp. 3d 639 (D. Del. 2017) ............................................................................... 24

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
  306 F. Supp. 3d 629 (S.D.N.Y. 2018) ........................................................................... 13

*Manigault v. ABC Inc.*,
  No. 17-CV-7375 (KNF), 2018 WL 5818101 (S.D.N.Y. Oct. 10, 2018) ....................... 21

*Maxtone–Graham v. Burtchaell*,
  803 F.2d 1253 (2d Cir. 1986) ......................................................................................... 10

*Nicklen v. Sinclair Broad. Grp., Inc.*,
  551 F. Supp. 3d 188 (S.D.N.Y. 2021) .............................................................................. 6

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004) ............................................................................................. 7

*Perfect 10 v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ................................................................................. 6, 8, 9

*Pot Luck, L.L.C. v. Freeman*,
  60-cv-0195 (DAB), 2009 WL 693611 (S.D.N.Y. Mar. 10, 2009) ................................. 19

*Preston Hollow Cap. LLC v. Nuveen LLC*,
  2019 WL 3801471 n.96 (Del. Ch. Aug. 13, 2019) ........................................................ 22

*Shady Recs., Inc. v. Source Enterprises, Inc.*,
No. 03-cv-9944 (GEL), 2005 WL 14920 (S.D.N.Y. Jan. 3, 2005)............................................ 7

*Singer v. Magnavox Co.*,
380 A.2d 969 (Del. 1977) ..................................................................................................... 23

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
677 F. Supp. 3d 186 (S.D.N.Y. 2023)................................................................................... 12

*Stern v. Lavender*,
319 F. Supp. 3d 650 (S.D.N.Y. 2018)................................................................................... 10

*Sussman-Automatic Corp. v. Spa World Corp.*,
15 F. Supp. 3d 258 (E.D.N.Y. 2014) ............................................................................... 20, 22

*Bd.-Tech Elec. Co. v. Eaton Corp.*,
737 F. App'x 556 (2d Cir. 2018) ............................................................................... 15, 17, 18

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
No. CV 20-613 (LPS) 2022 WL 1224903 (D. Del. Apr. 26, 2022) ...................................... 22

*Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*,
No. CV 22-915-GBW, 2024 WL 964203 (D. Del. Mar. 5, 2024)........................................... 23

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).................................................................................................. 17

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
497 F.3d 144 (2d Cir. 2007) ............................................................................................ 13, 17

*Torah Soft Ltd. v. Drosnin*,
224 F. Supp. 2d 704 (S.D.N.Y. 2002)................................................................................... 20

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
871 A.2d 1108 (Del. 2005) ................................................................................................... 20

*Walsh v. Townsquare Media, Inc.*,
464 F. Supp. 3d 570 (S.D.N.Y. 2020).............................................................................. 6, 7, 9

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
403 F. Supp. 3d 361 (S.D.N.Y. 2019)................................................................................... 13

*Weinberger v. UOP, Inc.*,
457 A.2d 701 (Del. 1983) ..................................................................................................... 23

*Williams-Sonoma, Inc. v. Wayfair Inc.*,
652 F. Supp. 3d 216 (D. Mass. 2023) ................................................................................... 14

**Statutes**

6 Del. Code § 2532 .......................................................................................... 4

15 U.S.C. § 1125(A) ........................................................................................ 4

17 U.S.C. § 107 ............................................................................................... 7

17 U.S.C. § 505 ............................................................................................. 25

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................. 5

**Other Authorities**

Cambridge English Dictionary, https://dictionary.cambridge.org/us/dictionary/english/
    white-label (last visited November 21, 2024) ..................................................... 3, 16

Defendant Carrot Cart, Inc. d/b/a Dupe.com ("Dupe.com" or "Defendant") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [1]

## PRELIMINARY STATEMENT

Dupe.com is a platform designed to empower consumers by providing them with transparency and choice in their purchasing decisions. Its intelligent search engine compares items across the internet, locating lookalike products often at significantly lower price points. By allowing shoppers to easily find alternatives to the products they want, Dupe.com enables consumers to make confident, informed choices.

William-Sonoma, Inc. ("WSI" or "Plaintiff"), a luxury home retailer, brings this lawsuit in a blatant attempt to suppress the valuable transparency Dupe.com brings to the market. The essence of Plaintiff's Complaint rests on the notion that the items Dupe.com identifies as the "same or similar" are, in fact, not. However, WSI's own allegations and the content it relies on in its Complaint ("Compl.") directly contradict this claim. In fact, WSI acknowledges the obvious—that its competitors create similar "look-for-less" products (Compl. ¶ 5.) and that consumers broadly recognize "dupes," as products that "mimic the look of something more expensive without claiming to be that product." [2] Far from "duping" its own users (*see* Compl. ¶ 5.), Dupe.com does

---

[1]    On a 12(b)(6) motion, the court may consider the complaint as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted)).

[2]    *See* Compl. ¶ 31 n.22 (TODAY Show segment highlighting the common understanding of the word "dupe" and explaining that "[t]he rise of so-called dupe culture among Gen Z and Millennials has spurred thousands of new companies churning out lookalike products." (https://www.today.com/video/how-dupe-products-help-people-achieve-an-aesthetic-for-less-213876805824)).

exactly what its name suggests: it gives consumers a user-friendly tool to compare furniture products online to find their perfect "dupe."

WSI's allegations—whether framed as claims of false advertising or unfair competition under federal or state law—should therefore be dismissed. Almost all the statements that WSI points to describe the furniture industry generally, and WSI never disputes their accuracy nor plausibly alleges any resulting harm. Because the statements at issue are either true or nonactionable puffery, Plaintiff resorts to plucking Dupe.com's statements out of context and twisting their meaning. However, Plaintiff has pled no facts whatsoever to support a likelihood of consumer confusion, a fatal pleading failure. WSI's Delaware unfair competition and deceptive trade practices claims should be dismissed for the additional, independent reason that Delaware law is not applicable here.

WSI's copyright allegations fare no better. Dupe.com does not "display" WSI's images on its website within the meaning of the Copyright Act, as the images are merely embedded links. In any event, this is a quintessential example of a highly transformative utility-expanding fair use. Dupe.com links to WSI's images for the purpose of providing consumers with price transparency through its comparative shopping tool—an entirely different purpose from WSI, who is merely advertising its own products. Furthermore, the images cannot possibly serve as a market substitute for the original, as WSI itself acknowledges there is no market for these images. WSI sells furniture, not photographs of furniture. For these reasons, Plaintiff's claims should be dismissed.

## **FACTUAL BACKGROUND**

Dupe.com is a search engine tool that uses image recognition software to identify and compare products, including furniture. (Compl. ¶ 5.) Consumers can use this tool in different ways when shopping online for furniture, including by typing "dupe.com" in front of a URL (*see, e.g.*,

A. Greenfield Declaration dated November 21, 2024, attached hereto ("Decl."), Ex. 1), or copy and pasting the furniture product's URL directly into the search bar on Dupe.com's website. (Compl. ¶ 29.) Dupe.com then returns results including "'look-for-less' products" or "replacement consumer goods for lower prices." (*Id.* ¶ 5.) Specifically, the results show embedded images of similar furniture items (*see id.* ¶ 60.), allowing consumers to click on the images and navigate to the source websites for review and/or purchase.

WSI is a furniture retailer that includes the brands West Elm, Pottery Barn, Pottery Barn Kids, and Williams Sonoma. (*Id.* ¶ 1.) WSI purports to design and develop "the overwhelming majority," but not all, of its products in-house, and concedes to partnering with third-party vendors to manufacture its products (*id.* ¶¶ 20, 46), a practice known as white labeling.

In the spring of 2024, Dupe.com launched a series of social media video posts on Instagram and TikTok aimed at raising awareness about Dupe.com. (*Id.* ¶ 28.) Many of these videos start by demonstrating Dupe.com's value, which includes addressing the practice of white labeling. (*See, e.g.*, Decl., Ex. 4 ("Your favorite furniture brands, they're all buying their products from the same few factories . . .").) Specifically, white labeling is a practice whereby "a product or service made or developed by a company [] is sold to the public under another company's name."  White Label, CAMBRIDGE          ENGLISH          DICTIONARY,          (available          at https://dictionary.cambridge.org/us/dictionary/english/white-label.) [3] As WSI suggests in the Complaint, white labeling is a practice that is notoriously common in the furniture industry. (Compl. ¶ 2.) In light of this common practice, Dupe.com aims to give consumers access to

---

[3]      A court may take judicial notice of dictionary definitions on a motion to dismiss. *See Goodman v. Bouzy*, No. 21-CV-10878 (AT)(JLC), 2023 WL 3296203, at *5 (S.D.N.Y. May 8, 2023) (citing *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988)).

information that allows them to compare similar-looking furniture sold by various online retailers, and ultimately to purchase furniture that fits comfortably within their budget. (*Id.* ¶ 22.)

Dupe.com's social media videos largely follow a similar pattern, whereby Dupe.com generally explains how the platform can help consumers compare prices and avoid overpaying for furniture, and then transitions to a second segment demonstrating how to use Dupe.com (i.e., "type Dupe.com in front of the URL"). (*See, e.g.*, Decl., Ex. 1.) In a select number of posts, Dupe.com used a WSI product as an example during the second demonstrative segment, and, in a single post, mentioned Pottery Barn by name. (*See id.*, Exs. 1–16 (the "Posts").) In August of this year, WSI copyrighted the product images that appeared in those Posts. (*See* Compl., Ex. 2 (the "Product Images").)

Likely feeling threatened by the consumer transparency Dupe.com provides, WSI filed this lawsuit on August 30, 2024, in an apparent attempt to coerce Dupe.com into shutting down its service. Specifically, based on the same allegedly false and misleading statements contained in Dupe.com's Posts, Plaintiff alleges four overlapping and duplicative claims: a claim of false advertising (Count I) and unfair competition (Count II) under the Lanham Act, 15 U.S.C. § 1125(A)), as well as a claim for unfair competition under Delaware common law (Count III), and a violation of Delaware's Deceptive Trade Practices Act ("DTPA"), 6 Del. Code § 2532 (Count IV). Plaintiff also brings a claim for copyright infringement based on Dupe.com's use of the Product Images in its Posts (Count V) and on its online platform (Count VI). For the reasons set forth below, these claims should be dismissed in their entirety.

## ARGUMENT

### I.    Legal Standard Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion under Rule 12(b)(6), a district court "accept[s] all of the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiffs' favor." *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). However, the complaint must plead allegations that state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### II.    WSI Fails to State a Claim for Copyright Infringement

#### A.    The Complaint Does Not Allege an Infringing "Display" Because the Dupe.com Platform Displays Only an Embedded Link

Count VI, alleging that Dupe.com's platform has infringed Plaintiff's exclusive display right under the Copyright Act by displaying the Product Images, should be dismissed under what is known as the "Server Test." Where, as here, a website merely embeds a link to an image without storing a copy on its own servers, the website does not "display" the image and thus cannot be liable for direct copyright infringement. *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1069 (9th Cir. 2023) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160–61 (9th Cir. 2007)).

Plaintiff does not allege that any of the Product Images are hosted on Dupe.com's servers. Rather, Plaintiff alleges that Dupe.com's "'reverse image'-type search function" (Compl. ¶ 5.)

5

displays the Product Images through "embedding or otherwise." (*Id.* at 60.) "An 'embedded' image is one that hyperlink[s] ... to [a] third-party website" through code that "directs the browser to the third-party server to retrieve the image." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 577 n.4 (S.D.N.Y. 2020) (Broderick J.) (quotation marks omitted). While "the image appears on the new page", it "remains hosted on the third-party server or website," *id.,* and, under the Server Test, only that third party displays the work for purposes of the Copyright Act, *Perfect 10*, 508 F.3d at 1160–61 (holding Google did not "display" copyrighted images where images were embedded links and not stored on Google's servers).

While the Second Circuit has not yet addressed the applicability of the Ninth Circuit's Server Test, *see Walsh*, 464 F. Supp. 3d at 580 n.6, no other appellate court has rejected it. Nor have the courts in this district rejected it in the context of a search engine like Dupe.com. *See, e.g.*, *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 596 (S.D.N.Y. 2018) (declining to apply the Sever Test, in part, because defendant's website was *not* a search engine); *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 195 (S.D.N.Y. 2021) (cabining the reasoning of *Perfect 10* to search engines). Because Dupe.com is a search engine akin to Google in *Perfect 10*, the Server Test should apply and Count VI should be dismissed.

### B. Regardless, Dupe.com's Use of the Product Images on Its Platform is a Fair Use

Regardless of whether the Court applies the Server Test in this case, Dupe.com's use of the Product Images on its platform is a protected fair use—an affirmative defense to copyright infringement. The fair use doctrine was developed to "permit[] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021). Indeed, because "[t]he ultimate goal of copyright is to expand public knowledge and understanding," *Authors Guild v.*

*Google Inc.*, 804 F.3d 202, 212 (2d Cir. 2015), "copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991).

The Copyright Act sets forth four "non-exclusive factors" courts must consider when evaluating fair use: "(1) the purpose and character of the use, (2) the nature of the work, (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of [the] copyrighted work." *Walsh*, 464 F. Supp. 3d at 579*; see also* 17 U.S.C. § 107. "[N]o single factor is dispositive," *Shady Recs., Inc. v. Source Enterprises, Inc.*, No. 03-cv-9944 (GEL), 2005 WL 14920, at *17 (S.D.N.Y. Jan. 3, 2005), and defendants "need not establish that each of the factors set forth in § 107 weighs in their favor," *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476–77 (2d Cir. 2004). Courts can resolve the issue of fair use on a motion to dismiss where, as here, "the facts necessary to establish the defense are evident on the face of the complaint," *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013), or where "discovery would not provide any additional relevant information in [the] inquiry," *Arrow Prods., LTD. v. Weinstein Co.*, 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014) *aff'd*, 729 F. App'x 131 (2d Cir. 2018).

This is precisely the type of case where dismissal is justified from the outset. The Complaint, together with the evidence attached thereto as exhibits or incorporated by reference, provide all the necessary facts to determine fair use. They show that, because Dupe.com's use of the Product Images is highly transformative, utility-expanding, and not a market substitute, Dupe.com's use is fair, such that WSI's copyright claims should be dismissed.

1. <u>The Purpose and Character of the Use Weigh in Favor of Fair Use</u>

The first factor, the purpose and character of the use, is "[t]he heart of the fair use inquiry," *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (citations omitted), and weighs strongly in

favor of Dupe.com. The focus of this factor is "whether and to what extent the new work is transformative," *Cariou v. Prince*, 714 F.3d 694, 705–06 (2d Cir. 2013) (citations omitted), meaning whether the new use "communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge," *Authors v. Guild Google Inc.*, 804 F.3d at 214.

Dupe.com's use of the Product Images on its platform is precisely the type of highly transformative, utility-expanding use that courts find weighs in favor of fair use. While WSI uses the Product Images to "market[] WSI's products for sale," (Compl. ¶ 58.), Dupe.com uses the images in its innovative search engine that promotes price transparency, allowing customers to instantly comparison shop. (*Id.* at 5.) This is comparable to other transformative uses, which courts have found to be fair use. *See Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 661 (2d Cir. 2018) (collecting cases of utility expanding fair uses, including "copying works into a database used to detect plagiarism," and displaying "'thumbnail' reproductions of art works to provide links . . . to the appropriate websites containing the originals.").

As the Second Circuit has explained, the copies used in a search engines or searchable databases, like Dupe.com, "serve[] a different function from the original" and, thus, constitute a "quintessentially transformative use." *Authors Guild v. Google Inc.*, 804 F.3d at 217 (finding digital copying of entire books to permit public search function to be fair use) (quoting *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 97 (2d Cir. 2014)). Although an image may have been originally created to serve an informative or aesthetic function, a search engine like Dupe.com "transforms the image into a pointer directing a user to a source of information." *Perfect 10*, 508 F.3d at 1165. That is, a search engine like Dupe.com "puts images in a different context so that they are transformed into a new creation"—namely, an "electronic reference tool" that provides a

public "social benefit" of "improving access to information on the [I]nternet." *Id.* (citations omitted). Dupe.com's highly transformative nature, thus, strongly supports a finding of fair use.

### 2.    The Nature of the Copyrighted Work Supports a Finding of Fair Use

The second factor focuses on the level of creativity in the subject work and asks the court to consider "(1) whether the work is expressive or creative[] . . . with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Cariou*, 714 F.3d at 709–10.

Here, the Product Images were informational rather than creative, as they were taken to showcase WSI's furniture rather than to serve as art pieces, supporting a finding of fair use. WSI alleges that the Product Images contain creative elements but are ultimately used for the functional purpose of "marketing WSI's products for sale." (Compl. ¶ 58.) Even where photography "involves skill and is not devoid of expressive merit," images that are informational in nature, as here, "are further from the core of copyright protections than creative or fictional works." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017). That the Product Images were already published by WSI, further supports fair use. *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1078 (2d Cir. 1992) (holding second factor favored fair use because work was "a published work available to the general public"). Thus, the second factor favors Dupe.com.

### 3.    The Amount and Substantiality of Use Supports a Finding of Fair Use

The third factor also supports a finding of fair use. This factor compares the portion of the use with the copyrighted work as a whole, with the goal of determining if it is "reasonable in relation to the purpose of the copying." *Walsh*, 464 F. Supp. 3d at 585 (citations omitted). "The crux of the inquiry is whether 'no more was taken than necessary.'" *Authors Guild, Inc. v.*

*HathiTrust*, 755 F.3d at 98 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 589 (1994)).

"There are no absolute rules as to how much of a copyrighted work may be copied and still be considered a fair use." *Maxtone–Graham v. Burtchaell*, 803 F.2d 1253, 1263 (2d Cir. 1986). Indeed, for some purposes, it may be not only "appropriate" but "necessary" to copy "the totality of the original." *Authors Guild v. Google, Inc.*, 804 F.3d at 221. In *Authors Guild v. Google*, the Second Circuit held that Google's copying of entire books was reasonable in relation to its purpose of creating a text-searchable database, because had it copied less, its search function could not adequately advise users. *Id.* Similarly, here, use of the entirety of the Product Images is necessary to allow consumers to visually compare the results provided by Dupe.com and determine whether to navigate to the source website. Since the copyrighted works at issue are photographs, "bits and pieces" could not be "excerpted without losing all value." *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 188 (D. Mass. 2007). Dupe.com's transformative use further justifies using the entire image. *See Authors Guild v. Google, Inc.*, 804 F.3d at 221 ("Complete unchanged copying has repeatedly been found justified as fair use" when copying was reasonably appropriate to achieve transformative purpose).

### 4.   The Effect of the Use on the Market Weighs in Favor of Fair Use

The last factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (citations omitted). "The operative question is 'whether the secondary use usurps the market of the original work.'" *Stern v. Lavender*, 319 F. Supp. 3d 650, 682 (S.D.N.Y. 2018) (quoting *Cariou*, 714 F.3d at 708). There is a "close linkage between the first and fourth factors," in that the more the copying is used

for "new, transformative purposes, the more it serves copyright's goal of enriching public knowledge and the less likely it is that the appropriation will serve as a substitute for the original." *Authors Guild v. Google*, 804 F.3d at 214, 223 (citing *Campbell*, 510 U.S. at 591). This factor, which has been described by the Supreme Court as "undoubtedly the single most important element of fair use," *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985), heavily favors Defendant.

Here, Dupe.com's use does not affect, let alone harm, any market for the Product Images. WSI sells furniture, not images of furniture. Indeed, WSI concedes that its copyrighted photographs are "*exclusively* for use in its brands' catalogs, websites, and other advertising and marketing" (Compl. ¶ 21 (emphasis added)), effectively conceding that it does not sell or even licenses the photographs. Regardless, it is difficult to conceive how the embedded links on Dupe.com's platform of the Product Images could constitute a "competing substitute." *Authors Guild v. Google, Inc.*, 804 F.3d at 224.

The Second Circuit's decision in *Swatch* is instructive here. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91–92 (2d Cir. 2014). There, the court found fair use where the "value" of a copyrighted recording of the plaintiff's earnings call "lay not in its capacity to generate licensing royalties, but rather in its capacity to convey important information about the company." *Id*. Because the defendant's use "in no way diminishe[d] that value," the court found that the fourth factor favored fair use. *Id.* Similarly here, the value of the Product Images lay in their ability to "convey information," *id.*, "in the course of marketing WSI's products for sale." (Compl. ¶ 58.) Dupe.com's embedded use of the Product Images to link to WSI's website where consumers can purchase WSI's products in fact furthers rather than diminishes that value.

Because all four fair use factors favor Dupe.com, Count VI alleging copyright infringement as to Dupe.com's platform must be dismissed.

### C. Similarly, Dupe.com's Use of the Product Images in its Social Media Posts is a Fair Use

For substantially the same reasons set forth above, WSI's copyright infringement claim with respect to Dupe.com's social media posts, Count V, also fails. The Posts that use the Product Images are providing a demonstration showing how the platform works. Since Dupe.com uses the Product Images in a highly transformative, utility-expanding manner, a demo that uses the Product Images to teach the public how to use Dupe.com's search function should similarly constitute fair use. At any rate, because there can be no market harm with respect to the Product Images (*see supra* at 11), and a social media video that demos Dupe.com could never conceivably be a substitute for the Product Images, Count V should also be dismissed.

### III.    The Complaint Fails to State a Claim under the Lanham Act

### A. The Complaint Fails to State a Claim for False Advertising

To state a claim for false advertising under the Lanham Act, WSI must plausibly allege that Dupe.com used a "'false or misleading description of fact' in promotional statements that 'misrepresents the nature, characteristics, [or] qualities' of products or services" and that it "has been injured as a result of the misrepresentation." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 56 (2d Cir. 2022) (quoting 15 U.S.C. § 1125(a)(1)). As a threshold matter, a plaintiff must allege that is has suffered injuries that fall within the "zone of interest" protected by the statute (i.e., "injury to a commercial interest in reputation or sales)," and that its injuries were "proximately caused" by a violation of the statute. *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 201 (S.D.N.Y. 2023) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).

"A claim of false advertising may be based on at least one of two theories: 'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers'" (i.e., impliedly false). *Erchonia Corp. v. Bissoon,* 410 F. App'x 416, 419 (2d Cir. 2011) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). "A message can only be literally false if it is unambiguous." *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). In other words, in order to plead a claim for literal falsity, WSI would have to allege that its own interpretation is the only reasonable interpretation of Dupe.com's statements. *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007). "When determining whether an advertisement is 'literally false,' a court may rely on its own common sense and logic in interpreting the message of the advertisement." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) (quotation marks omitted).

Alternatively, in order to allege that an advertisement, while not literally false, is misleading or confusing, a plaintiff must "*offer facts* to support that claim." *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (citations omitted). Conclusory allegations do not suffice. *Id.* (dismissing false advertising claim where counterclaimant failed to plausibly allege that a reasonable consumer would be misled).

Moreover, "[a] defendant cannot be liable for advertisements that amount to puffery." *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 369 (S.D.N.Y. 2019). "Statements of puffery are subjective claims about products that 'cannot be proven either true or false' or that otherwise use 'broad, vague, and commendatory language.'" *Id.* (quoting *Time Warner Cable, Inc.*, 497 F.3d at 159).

WSI identifies certain categories of statements, including those listed below, as allegedly false or misleading. The Complaint fails to plausibly allege a claim with respect to any of these groups. Additionally, because the Complaint fails to plausibly allege injury, its false advertising claim should be dismissed in full.

1. <u>Dupe.com provides customers with the "same or similar items"</u>

First, the statements that Dupe.com provides results showing the "same or similar" items (*See* Decl., Exs. 1–2, 4–5 & 10–11), are not false or misleading. WSI alleges that this statement is "false and/or misleading, insofar as it claims that the [furniture items] in Dupe.com's search results offer the same or similar quality, finishings, manufacturing certificates, and other characteristics as the [WSI furniture]." (Compl., Ex. 1, Ref. #1–2, 4–5, 10–11.) But WSI does not, and cannot, plausibly allege that Dupe.com's broad use of the word "similar" somehow implies that it is referencing any specific characteristic of the furniture. Rather, the only reasonable inference is that Dupe.com claims its results show products that share *some* common characteristics, whether in terms of appearance or other features. This is particularly true in light of Dupe.com's statements that it provides results that include "cheaper alternatives" (Decl., Ex. 16.), and "lookalike, similar items." (*Id.*, Ex. 7.) Dupe.com's search results *are* broadly similar, and there is no allegation to the contrary. (*See, e.g.*, Compl. ¶ 30 (merely alleging Dupe.com's search results are not similar because they "bring[] up examples of 'fast furniture.'").) [4]

---

[4]    Remarkably, WSI alleges in recent litigation that the lookalike products of its competitor, who has appeared in Dupe.com's search results for WSI products (*see, e.g.*, Decl., Exs. 1–5), are "identical or virtually identical" to WSI products, utterly belying any claim that Dupe.com's search results are not at least *similar* to WSI's products. *See Williams-Sonoma, Inc. v. Wayfair Inc.*, 652 F. Supp. 3d 216, 220 (D. Mass. 2023) (WSI alleges that Wayfair Inc., "has made . . . numerous products which . . . are so highly similar to West Elm's patented products that an ordinary observer would be confused by the imitation." (quoting WSI's Complaint)).

Nor is this statement misleading. "The Complaint offers no non-conclusory allegations or facts to support the claim that consumers have been misled or confused" by these true statements. *See Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556, 561 (2d Cir. 2018) (affirming dismissal on this basis). Consumers understand the meaning of a "dupe" and know that it does not refer to a product that is exactly like the original, much less that the products are the same down to the "manufacturing certificates," as WSI claims.[5] (*See* Compl. ¶ 31 n.22 (citing TODAY Show segment explaining that "dupes are products that *mimic* the look of something more expensive, without claiming to *be* that product." (emphasis added)).) This is a fatal pleading failure. *See Bd.-Tech Elec.*, 737 F. App'x at 561; *see also Alcon Vision, LLC v. Lens.com, Inc.*, No. 1:18-CV-00407 (NG)(RLM), 2022 WL 1665453, at *5 (E.D.N.Y. May 25, 2022) (stating that, at the pleading stage, in the absence of consumer survey data, plaintiff must plead "non-conclusory facts raising a plausible inference that a statistically significant number of consumers were misled").

Regardless, this statement is non-actionable puffery. Whether one piece of furniture is "similar" to another involves a subjective evaluation of appearance and quality over which reasonable minds could disagree and, thus, is not actionable. *See Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (finding subjective statements such as "Pro", "highly qualified," "the right," or the "best" to be "non-actionable puffery").

---

[5]    While WSI cites to one social media post where Dupe.com claims that search results for a lamp are the "exact" same (Compl., ¶ 6 n.6.), this post does not mention WSI and WSI does not dispute its accuracy (nor could it, as many brands do in fact sell the "same exact" furniture). All of the Posts at issue here regarding WSI include the language "same or similar," which WSI does not plausibly dispute.

2.  <u>"When it comes to white labeling, Pottery Barn is pretty guilty almost all the time"</u>

WSI does not plausibly allege that this statement is literally false. (Decl., Ex. 6.) Rather than addressing Dupe.com's statement, WSI attempts to misdirect the reader by distorting the meaning of the term "white labeled" and disputing that strawman. The dictionary defines "white label" as "a product or service made or developed by a company which is sold to the public under another company's name." *See* "White Label," CAMBRIDGE ENGLISH DICTIONARY, (available at https://dictionary.cambridge.org/us/dictionary/english/white-label). WSI redefines and expands the meaning of "white labeled" to encompass the idea that the product is manufactured by a third-party on a *"non-exclusive" basis*. (Compl. ¶ 44 (emphasis added).) WSI then claims that Dupe.com's statement is false because it alleges its third-party "manufactures" supply products to Pottery Barn exclusively, under certain conditions (when the products are designed by Pottery Barn "in-house"). (Compl., Ex. 1, Ref. #6.)

Under either definition, WSI fails to plausibly allege that Dupe.com's statement is literally false. Indeed, nowhere in the Complaint does WSI claim that it manufactures *any* of its own products. (Compl. ¶¶ 3, 36 (WSI works with "manufacturing partners" and "vendors").) Instead, it concedes that each and every one of the specific WSI products at issue in the Posts were manufactured by third-party "vendors" (Compl., Ex. 1, Ref. #3–5.) or "manufacturer[s]," (*id.* Ref. #6, 8–9.). In other words, the products are white labeled within the literal definition of the term. Even under WSI's definition of the term, WSI implies that Pottery Barn does "white label," at least some of the time (i.e., with respect to the products that are *not* designed in-house by Pottery Barn). (*See* Compl., Ex. 1, Ref. #6 (stating that Pottery Barn "designs and develops *the majority* [but not all] of its furniture in-house" and manufacturers supply products on an exclusive basis *only* with respect to "Pottery Barn's in-house designed products" (emphasis added)).)

At most, the meaning of white labeling here has more than one reasonable interpretation, such that WSI would need to allege an implied falsehood to sustain its claim. *See Time Warner Cable, Inc. v. Direct, Inc.*, 497 F.3d 144 (2d Cir. 2007)) ("[I]f the language . . . is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."). However, because the Complaint offers no facts whatsoever that consumers have been misled or confused by these true statements, as is required to plead implicit falsity, Plaintiff's claim fails. *See, e.g.*, *Bd.-Tech*, 737 F. App'x at 561. In the alternative, this statement is non-actionable puffery, as "pretty guilty almost all of the time" is the type of broad, vague language that cannot be proven true or false. *See Time Warner Cable,* 497 F.3d at 159.

3. <u>"Most furniture is mass-produced, mass-manufactured in the same factories"</u>

The Complaint does not allege that this general statement (Compl., Ex. 1, Ref. #8–9.) or Dupe.com's similar statements (*id.* Ref. #3–5 & 16), about the furniture industry writ large are false. In fact, WSI not only concedes that it white labels (*see supra* at 16), but it also alleges that white labeling on a non-exclusive basis is common in the industry. (*See* Compl. ¶ 2 ("[M]any other places where customers can buy furniture . . . sell [their] products through other retailers").)

Nor does Plaintiff adequately allege that the statements would mislead a reasonable consumer. As the Second Circuit has acknowledged, "[c]ontext is crucial," and, thus, a plaintiff "may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect [] to survive a motion to dismiss or, indeed, to escape admonishment." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). The Posts clearly contain two segments. In the first segment, Dupe.com outlines several general problems in the furniture industry, giving the viewer an understanding of the utility of Dupe.com and how it can help them save money. The second part of the video shifts to demonstrating how Dupe.com operates, using a WSI product briefly for

illustrative purposes. The WSI product is displayed on screen during the demo, but the narrator does not discuss or reference the brand verbally. Plaintiff offers no facts that support its conclusory contention that a reasonable consumer would be misled to believe that the precise product in the demo was manufactured in any specific manner. As such, Plaintiff has failed to allege that these general, true statements constitute false advertising.

### 4. Furniture Price "Scams"

WSI alleges implied falsity with respect to a single Post regarding price scams. (*See* Compl., Ex. 1, Ref. #7.) Plaintiff alleges that Dupe.com's general statement that "brands jack up the prices of their products" "around big sales events" and then "discount it" is misleading because it "falsely implies" that Pottery Barn does not "compl[y] with all applicable laws governing sales activities." (*Id.*) This Post shares the same two-part structured described *supra* at 17. Notably, WSI never denies that it or other brands engage in this practice. It is hardly plausible that this literally true statement about the general furniture industry would mislead consumers to believe that WSI is breaking the law, nor does Plaintiff offer any facts to support this implausible contention. *See, e.g.*, *Bd.-Tech*, 737 F. App'x at 560. With respect to the rest of the Posts that make statements regarding pricing (Decl., Exs. 10–15.), the Complaint does not even attempt to allege that Dupe.com's statements are literally false or misleading but, rather, merely alleges that these statements are "disparaging" (Compl., Ex. 1, Ref. #10–15.)—a claim that is not actionable under the Lanham Act.

### 5. Regardless, WSI Does Not Adequately Plead Injury

In any case, WSI does not adequately allege any injury from Dupe.com's Posts. Like any other element of the claim, injury under the Lanham Act must be pled with particularity, and "the plaintiff must offer "something more than [their] mere subjective belief that he is injured or likely

to be damaged." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 543 (S.D.N.Y. 2018) (quoting *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189–90 (2d Cir. 1980)).

WSI does not allege a causal relationship between Dupe.com's allegedly misleading Posts and any harm to WSI. WSI merely alleges, in purely conclusory fashion, that it "has been injured as a result of Defendant's false and misleading statements through both a direct diversion of sales and a lessening of goodwill associated with WSI's brands and products." (Compl. ¶¶ 75, 87.) Yet, there are no non-conclusory allegations that support this. For example, Plaintiff does not allege that consumers actually relied on Dupe.com's Posts when making purchasing decisions for any WSI product, nor does it plead any factual allegations to support an overlap in the consumer bases of WSI and Dupe.com. WSI's conclusory accusations are insufficient at the pleading stage. *See Davis*, 345 F. Supp. 3d at 544 (dismissing Lanham Act claim where plaintiff failed to allege any facts supporting allegation that consumers actually relied on the allegedly misleading statements); *see also Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-cv-4459 (PGG), 2020 WL 5659581, at *7 (S.D.N.Y. Sept. 23, 2020) (dismissing false advertising claim for failure to allege injury). As such, Count I should be dismissed.

### B. Plaintiff's Unfair Competition Claim Is Duplicative of its False Advertising Claim

WSI's claim for unfair competition under the Lanham Act is duplicative of, and fails for the same reasons as, its false advertising claim under the same statute. It is well established that "under Section 43 of the Act, there is no specific Federal cause of action for unfair competition." *Camelot SI, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 481 (S.D.N.Y. 2022). "Instead unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Pot Luck, L.L.C. v. Freeman*, 60-cv-0195 (DAB), 2009 WL 693611, at *4 (S.D.N.Y. Mar. 10, 2009). WSI's unfair competition

claim under the Lanham Act is the same as its false advertising claim: both causes of action allege that Dupe.com made false and misleading statements as to WSI's products in its Posts. (*Compare* Compl. ¶¶ 63–77 *with* Compl. ¶¶ 78–89.) Thus, the unfair competition claim under the Lanham Act must be dismissed as duplicative. *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 273 (E.D.N.Y. 2014) (dismissing unfair competition claim under the Lanham Act as duplicative of the Plaintiff's trademark infringement and false advertising claims under that statute).

### IV.    Plaintiff's Delaware Claims Also Fail

#### A.  Plaintiff Fails to State a Common Law Unfair Competition Claim

##### 1.   New York, not Delaware Law, Applies

As an initial matter, New York law, not Delaware law, applies to this case. While a Delaware corporation's internal affairs are governed by Delaware law, "where the rights of third parties external to the corporation are at issue, e.g., contracts and torts," the law of the state of incorporation does not automatically apply. *See VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 n.14 (Del. 2005). A choice of law analysis is required here because there is an actual conflict between New York and Delaware's unfair competition laws, as set forth below. *See Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir. 1998). New York's choice-of-law analysis employs an interest analysis in tort actions, which distinguishes between "conduct-regulating" or "loss-allocating" laws. *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018)*.* Where a "conduct-regulating" law is at issue, as is the case here, *see Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 720 (S.D.N.Y. 2002), "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Holborn Corp.*, 304 F. Supp. 3d at 398.

Here, WSI unequivocally pleads that the alleged tort occurred in New York. (Compl. ¶¶ 15–16 (alleging that Dupe.com's conduct took place in New York, that Dupe.com is aware its actions are likely to cause harm in New York, and that "a substantial portion of the events and omissions giving rise to the claims occurred" not just in New York but "in this District").) Indeed, WSI does not include a single allegation regarding Delaware aside from the parties' incorporation there. (*Id.* ¶¶ 11–12.) This is not enough. In *Holborn*, the court held that New York, rather than Florida, law applied where, like here, the alleged tortious conduct occurred in New York. *Holborn Corp.*, 304 F. Supp. 3d at 400–03. The court decided the choice-of-law question on a motion to dismiss because plaintiff failed "to allege any facts that would cause Florida law to govern," *id.* at 403, even in light of counter-claim plaintiff's varied allegations regarding Florida, including that it was domiciled in Florida, *id.* at 395. Here, WSI alleges far less—it fails to mention Delaware whatsoever aside from the parties' state of incorporation. As such, New York law should apply.

### 2. WSI Fails to State a Claim for Unfair Competition under New York Law

Plaintiff's claim for unfair competition under state law fails for the same reason its unfair competition claim under the Lanham Act fails. "[T]he elements necessary to prevail on causes of action for . . . unfair competition under New York common law mirror the Lanham Act." *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. at 381 (quoting *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008)). As such, where a Lanham Act unfair competition claim fails, courts also dismiss the New York claim. *See id.* [6] Even if the Lanham Act claim were to

---

[6]     WSI's common law unfair competition claim is even more deficient than its Lanham Act claim because, under New York law, WSI is also required to plead bad faith. *Manigault v. ABC Inc.*, No. 17-CV-7375 (KNF), 2018 WL 5818101, at *3 (S.D.N.Y. Oct. 10, 2018), *aff'd*, No. 18-3133, 2019 WL 6340254 (2d Cir. Nov. 27, 2019). Thus, Count III must also be dismissed under New York law because WSI fails to plead any non-conclusory allegations of bad faith. *See Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017) (dismissing unfair competition

survive, the New York unfair competition claim should be dismissed on the independent basis that it is duplicative. *See Sussman-Automatic Corp.*, 15 F. Supp. 3d at 273.

       3.   <u>Even if Delaware Law were Applicable, the Complaint Does Not State a Claim for Unfair Competition</u>

Even assuming Delaware law applies, WSI's claim fails. "To the extent that unfair competition exists as an independent common-law tort [under Delaware law], it is essentially the same tort ... [as] tortious interference with prospective business relations." *Preston Hollow Cap. LLC v. Nuveen LLC*, 2019 WL 3801471, at *9 n.96 (Del. Ch. Aug. 13, 2019). To state an unfair competition claim under Delaware law, Plaintiff must allege "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Kulick v. Gamma Real Est. LLC*, No. 1:20-CV-03582 (MKV), 2022 WL 4467341, at *16 (S.D.N.Y. Sept. 23, 2022) (citations omitted).

WSI fails to plead any of the necessary elements of this claim. Notably, WSI fails to plead any facts that support its bald allegation that it had "a reasonable expectancy of entering into a valid business relationship with many of Defendant's social media viewers or website viewers." (Compl. ¶ 93.) While "identifying a specific party by name is not necessary," WSI has not pled any facts that allow this court to "reasonably infer that specific parties were involved." *See Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, No. CV 20-613 (LPS), 2022 WL 1224903, at *7 (D. Del. Apr. 26, 2022) (quoting *You Map, Inc. v. Snap Inc.*, No. CV 20-00162 (CFC), 2021 WL 106498, at *9 (D. Del. Jan. 12, 2021)). Nor are there any allegations that Dupe.com dissuaded anyone from doing business with WSI, let alone in a wrongful manner. As such, Count III should be dismissed. *See id.* (dismissing unfair competition claim, where plaintiff merely alleged loss of

---

claim because "conclusory language has been held insufficient to support an inference of bad faith.")

"business opportunities" rather than loss of a "specific customer"). *See also FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014 WL 6627727, at *14 (D. Del. Nov. 14, 2014) (dismissing Delaware unfair competition claim because plaintiff made "no reference . . . to any particular 'valid business relationship' . . . that Defendants are alleged to have interfered with").

### B. WSI Fails to Allege a Claim under the Delaware Deceptive Trade Practices Act ("DTPA")

#### 1. The DTPA Claim Fails for the Same Reasons that WSI's Lanham Act Claim Fails

As an initial matter, Plaintiff's claim under the DTPA rises and falls with its claims for false advertising and unfair competition under the Lanham Act. *See Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 668 (D. Del. 2008) (citing to its Lanham Act analysis in dismissing DTPA claims for failure to state a claim). Thus, the pleading failures as to its federal claims (*see supra* at 12–19), are also fatal to its claim under the DTPA. *See id.*; *see also Tigo Energy Inc. v. SMA Solar Tech. Am. LLC*, No. CV 22-915-GBW, 2024 WL 964203, at *13 n.9 (D. Del. Mar. 5, 2024) (dismissing DTPA claim because courts "typically treat [DTPA] claims and Lanham Act claims as rising and falling together").

#### 2. Plaintiff Fails to Allege that the DTPA Applies Here

Regardless of whether Plaintiff states a claim under the Lanham Act, Plaintiff's DTPA claim fails because the DTPA does not apply extraterritorially. *See Singer v. Magnavox Co.*, 380 A.2d 969, 981 (Del. 1977) (stating the presumption that "a law is not intended to apply outside the territorial jurisdiction of the State in which it is enacted" and explaining that a "Delaware corporation" is not bound by the state's statutes "simply because the company is incorporated [t]here"), *overruled on other grounds by Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983). Where, as here, a plaintiff fails to plead any conduct whatsoever occurring in Delaware (*see supra* at 20), the DTPA does not apply. *See Guidance Endodontics, LLC v. Dentsply, Int'l, Inc.*, 663 F.

Supp. 2d 1138, 1155 (D.N.M. 2009) ("with no basis for applying the law of Delaware—no evidence of wrongful conduct or injury occurring in Delaware—a claim under the Delaware DPA is not available."). *Cf. Alsoy v. Ciceksepeti Internet Hizmetleri Anonim Sirketi*, 232 F. Supp. 3d 613, 619 (D. Del. 2017) (dismissing DTPA claim where allegations of direct competition related to Turkey and not Delaware).

### 3.   Plaintiff Fails to Allege a Horizontal Relationship under the DTPA

Even if there was a nexus with Delaware and the DTPA applied, Plaintiff's claim should be dismissed because it fails to plead a "horizontal relationship" between the parties, as required under Delaware law. *Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 648 (D. Del. 2017) (citations omitted). "A horizontal business relationship is one that exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors." *Id.* (quotation marks omitted).

There are no allegations in the Complaint suggesting that WSI and Dupe.com are in a horizontal business relationship. Nowhere does WSI allege that the parties are direct competitors, even in a conclusory fashion. Nor does WSI allege that the parties operate on the same market level. Instead, according to the Complaint, WSI is a "design-led multi-channel home retailer[]" (Compl. ¶ 1.), while Dupe.com operates a search engine that allows consumers to comparison shop (*id.* ¶ 5.). WSI lends much ink to the apparently meticulous and bespoke process by which it designs and develops its furniture to ultimately sell to consumers. (*See* Compl. ¶¶ 2, 3, 36, 46.) Yet, WSI does not allege that Dupe.com does any of these things—design furniture, develop furniture, or sell furniture. This is fatal to its claim. *See Livery Coach Sols.*, 245 F. Supp. 3d at 648 (dismissing DTPA claim where parties were "not direct competitors and do not manufacture similar products."); *Alsoy*, 232 F. Supp. 3d at 619 (dismissing DTPA claim where, even though parties may have been direct competitors in Turkey, no facts suggest the parties had a horizontal

relationship "anywhere in the United States, let alone Delaware"). For all these reasons, Count IV should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant Dupe.com respectfully requests that the Court dismiss each of WSI's claims with prejudice and award Defendant its attorneys' fees and costs as prevailing parties pursuant to 17 U.S.C. § 505.

Dated: November 21, 2024
New York, New York

By: */s/ Justin M. Sher*
Justin M. Sher
Amanda Greenfield
Courtney A. Gans
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, NY 10004
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
E-mail: JSher@shertremonte.com

*Attorneys for Carrot Cart, Inc. (d/b/a Dupe.com)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2024, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

*/s/ Justin M. Sher*
Justin M. Sher
